# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:20-CV-00215-RJC-DSC

| | |
|---|---|
| **Terrie Sanders et al.,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **DUKE ENERGY CAROLINAS LLC,** | ) |
| **formerly DUKE ENERGY** | ) |
| **CORPORATION,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM AND RECOMMENDATION

**THIS MATTER** is before the Court on "Defendant's Partial Motion to Dismiss Plaintiffs' Third Amended Complaint" (document #17) and the parties' briefs and exhibits.

The Motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and is ripe for disposition.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that Defendants' Motion be <u>granted</u> as discussed below.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Terrie Sanders, joined by other registered owners and tenants of property on or near the Catawba River, brings this action against Duke Energy Carolinas LLC.

Accepting the factual allegations of the Third Amended Complaint as true, Duke Energy owns and operates hydroelectric dams along the Catawba River. Under the Federal Power Act ("FPA"), the Federal Energy Regulatory Commission ("FERC") has licensed Duke Energy to

operate and maintain the Catawba-Wateree Hydroelectric Project. The Project extends from Lake James in North Carolina to Lake Wateree in South Carolina. As part of the Project, Duke Energy controls the flow of water in the Catawba River through Mountain Island Lake and Lake Norman in North Carolina. Duke Energy can raise or lower the water level in the Catawba River by adjusting the water flow through its hydroelectric dams.

During the first week of June 2019, Charlotte meteorologists forecasted an extreme rain event. They predicted ten to fourteen inches of rain. From June 7 to June 9, 2019, approximately fourteen inches of rain fell in the Charlotte area. During the extreme rain event, Duke Energy opened the floodgate at the Lake Norman Dam instead of slowly releasing the water in anticipation of the flooding. The Catawba River rapidly flooded. Plaintiffs suffered millions in property damage from flooding and erosion.

On February 7, 2020, Plaintiffs sued Duke Energy in Mecklenburg County Superior Court to recover damages resulting from the flooding of their respective properties. On April 10, 2021, Duke Energy removed this case to this Court on the grounds of federal question jurisdiction.

On October 19, 2020, Plaintiffs filed their Third Amended Complaint. Plaintiffs assert claims for Negligence, Negligent Infliction of Emotional Distress, and Trespass to Real Property against Duke Energy under the FPA and FERC guidelines and North Carolina common law. Duke Energy filed the instant Motion to Dismiss on November 23, 2020 pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II. STANDARD OF REVIEW

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's "[f]actual allegations must be

enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555) (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true); see also Wag More Dogs, LLC v. Cozart, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks omitted)).

Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark[] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Iqbal at 678-79.

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. Id. at 679. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)).

The sufficiency of the factual allegations aside, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." Sons of Confederate Veterans v. City of Lexington, 722 F.3d 224, 228 (4th Cir. 2013) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)). Indeed, where "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations, a claim must be dismissed." Neitzke v. Williams, 490 U.S. at 328; see also Stratton v. Mecklenburg Cnty. Dept. of Soc. Servs., 521 F. App'x 278, 293 (4th Cir. 2013)). The court must not "accept as true a legal conclusion couched as a factual allegation." Anand v. Ocwen Loan Servicing, LLC, 754 F.3d 195, 198 (4th Cir. 2014).

### III. DISCUSSION

A. **Negligent Infliction of Emotional Distress**

To claim negligent infliction of emotional distress, "a plaintiff must allege that (1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress. . . and (3) the conduct did in fact cause the plaintiff severe emotional distress." Newman v. Stepp, 852 S.E.2d 104, 107 (N.C. 2020) (quoting Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A., 395 S.E.2d 85, 97 (N.C. 1990)).

To establish negligence, a plaintiff must show that defendant owed plaintiff a duty of care; defendant breached that duty of care; the breach was the actual and proximate cause of plaintiff's injury; and plaintiff suffered damages as a result of the breach. See McClease v. Dover Volunteer Fire Dep't., 817 S.E.2d 604, 608 (N.C. App. 2018). The plaintiff must prove her severe emotional distress was "a proximate and foreseeable result of the defendant's negligence." Johnson, 395 S.E.2d at 97. To determine foreseeability, the court should consider "the plaintiff's proximity to the negligent act, the relationship between the plaintiff and the other person for whose welfare the plaintiff is concerned, and whether the plaintiff personally observed the negligent act." Id. at 98. The plaintiff must show that she suffered severe emotional distress by alleging "any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." Id. at 97. Allegations of temporary fright are insufficient. Id.

The Third Amended Complaint alleges that Plaintiffs "suffer[ed] severe emotional distress, including mental anguish, depression, phobia, sleep deprivation, and other various severe and disabling emotional and/or mental conditions." Doc. 15, ¶ 65. This claim amounts to nothing more than conclusory allegations. Plaintiffs have failed to meet the plausibility standard under Iqbal.

For those and the other reasons stated in Defendant's brief, the undersigned respectfully recommends that Defendant's Partial Motion to Dismiss be granted.

### B. Applicable Standard of Care

Under the FPA, FERC may issue licenses for the "purposes of constructing, operating, and maintaining" projects "necessary or convenient . . . for the development, transmission, and utilization of power across, along, from, or in any of the streams or other bodies of water over

which Congress has jurisdiction." 16 U.S.C.A. § 797(e). Section 10(c) of the FPA requires licensees to "conform to such rules and regulations as the commission may from time to time prescribe for the protection of life, health, and property." 16 U.S.C.A. § 803(c).

The United States Supreme Court has held that under the FPA, federal law preempts state law except for limited powers reserved to the states for municipal irrigation purposes. See First Iowa Hydro-Elec. Co-op. v. Federal Power Commission, 328 U.S. 152, 176 (1946). The Supreme Court later affirmed First Iowa, stating "[t]here has been no sufficient intervening change in the law, or indication that First Iowa has proven unworkable or has fostered confusion or inconsistency in the law[.]" California v. F.E.R.C., 495 U.S. 490, 499 (1990). Further, "Congress has amended the FPA to elaborate and reaffirm First Iowa's understanding that the FPA establishes a broad and paramount federal regulatory role." Id. (citing 16 U.S.C. §§ 803(a)(1)-(3)).

The Court finds Simmons v. Sabine River Authority, La., 732 F.3d 469 (5th Cir. 2013) to be instructive here. In Simmons, plaintiffs brought a state tort law claim alleging that defendant caused flooding and erosion to their properties after opening the spillway gates of a dam. Id. at 472. The Fifth Circuit concluded "the FPA preempts property damage claims based in state tort law where the alleged damage is the result of 'negligently' operating in compliance with a FERC-issued license". Id. at 474. The court found that section 10(c) of the FPA requires licensees to maintain the project under Commission rules. Id. (citing 16 U.S.C. § 803(c)).

The FPA preempts Plaintiffs claims based upon a state law standard of care. FERC licensed Duke Energy in accordance with the FPA to oversee the Catawba-Wateree Hydroelectric Project. Applying California v. FERC, the FPA sets the appropriate standard of care for all claims against Duke Energy regarding this Project, except for those expressly reserved to the states. As in Simmons, Plaintiffs suffered property damage as a result of flooding stemming from a federally

licensed dam. The FPA preempts Plaintiffs' negligence, negligent infliction of emotional distress, and trespass claims to the extent they are based upon state law standards of care.

For those and the other reasons stated in Defendant's brief, the undersigned respectfully recommends that Defendant's Partial Motion to Dismiss be granted.

## RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that "Defendant's Partial Motion to Dismiss Plaintiffs' Third Amended Complaint" (document #17) be **GRANTED**.

## IV. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to the parties' counsel and to the Honorable Robert J. Conrad, Jr.

**SO ORDERED AND RECOMMENDED**.

Signed: February 11, 2021

David S. Cayer
United States Magistrate Judge