# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## CIVIL ACTION NO. 3:20-CV-00215-KDB-DSC

|  |  |
|---|---|
| **TERRIE SANDERS, ET AL.,** | |
| **Plaintiffs,** | |
| **v.** | <u>**ORDER**</u> |
| **DUKE ENERGY CAROLINAS, LLC,** | |
| **Defendant.** | |

**THIS MATTER** is before the Court on Defendant Duke Energy Carolinas, LLC's ("Duke") Partial Motion to Dismiss Third Amended Complaint (Doc. No. 17), the Memorandum and Recommendation of the Honorable Magistrate Judge David S. Cayer ("M&R") entered February 11, 2021, (Doc. No. 24) and Plaintiffs' Objection to the M&R, (Doc. No. 25). The Court has carefully considered this motion, the parties' briefs and other pleadings of record in this action. As discussed below, the Court concludes after its *de novo* review that the findings and conclusions of the Magistrate Judge will be **ADOPTED** and the Partial Motion to Dismiss will be **GRANTED** in part and **DENIED** in part. Specifically, the Court will dismiss Plaintiffs' claim for Negligent Infliction of Emotional Distress, deny Duke's motion to partially dismiss Plaintiffs' other claims as outside the scope of Federal Rule of Civil Procedure 12(b)(6), and hold that Duke's federal license to operate the hydroelectric project at issue and related federal law sets the applicable standard of care for Plaintiffs' negligence-based claims.

1

# I. LEGAL STANDARD

A district court may designate a magistrate judge to "submit to a judge of the court proposed findings of fact and recommendations for the disposition" of certain pretrial matters, including motions to dismiss. 28 U.S.C. § 636(b)(1). Any party may object to the magistrate judge's proposed findings and recommendations, and the court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). Objections to the magistrate's proposed findings and recommendations must be made "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." *United States v. Midgette,* 478 F.3d 616, 622 (4th Cir.), *cert. denied*, 551 U.S. 1157 (2007). However, the Court does not perform a *de novo* review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). After reviewing the record, the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012). A court need not accept a complaint's "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc*., 591 F.3d 250, 255 (4th Cir.

Case 3:20-cv-00215-KDB-DSC   Document 27   Filed 01/31/22   Page 2 of 13

2009). The court, however, accepts all well-pled facts as true and draws all reasonable inferences in Plaintiff's favor. *See Conner v. Cleveland Cty., N. Carolina, No. 19-2012, 2022 WL 53977, at *1 (4th Cir. Jan. 5, 2022); E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc*., 637 F.3d 435, 440 (4th Cir. 2011). In so doing, the Court "must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Pa. Nat'l Mut. Cas. Ins. Co. v. Beach Mart, Inc.*, 932 F.3d 268, 274 (4th Cir. 2019). Construing the facts in this manner, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Pledger v. Lynch*, 5 F.4th 511, 520 (4th Cir. 2021) (quoting *Ashcroft*, 556 U.S. at 678). Thus, a motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

## II. FACTS AND PROCEDURAL HISTORY

In this action, 57 North Carolina Plaintiffs who own or rent property along the Catawba River or Mountain Island Lake seek to recover damages allegedly caused by Duke's negligence in managing the flow of the river through hydroelectric dams on the Catawba-Wateree Hydroelectric Project ("CWHP") during an "extreme rain event" in June 2019. Specifically, in their Third Amended Complaint Plaintiffs allege that Duke failed to heed forecasted warnings and negligently opened dam floodgates instead of slowly releasing water prior to the rainstorms, which they contend led to the flooding of their properties.

Plaintiffs assert claims for Negligence, Negligent Infliction of Emotional Distress ("NIED"), and Trespass to Real Property alleging that Duke failed to comply with the Federal Power Act, the requirements of its federal license to operate the CWHP, Federal Energy

Case 3:20-cv-00215-KDB-DSC   Document 27   Filed 01/31/22   Page 3 of 13

Regulatory Commission regulations, and North Carolina common law. Duke seeks dismissal of Plaintiff's claim for NIED and its remaining claims to the extent they rely on standards of conduct other than federal law pursuant to Fed. R. Civ. Proc. 12(b)(6). The M&R recommends that the Court grant Duke's motion.

## III. DISCUSSION

A. <u>Claim for Negligent Infliction of Emotional Distress</u>

Plaintiffs' first objection to the M&R argues that it wrongly recommends that the Court dismiss Plaintiffs' NIED claim. The Court disagrees, for two reasons. First, the M&R correctly found that Plaintiffs' conclusory allegations in support of their NIED claim fail to meet even the generous "plausibility" standards of *Iqbal* and *Twombly*. Second, in these unique circumstances,[1] Plaintiffs cannot establish, as a matter of North Carolina law, that "severe emotional distress" was "reasonably foreseeable" as a consequence of the property damage that might be caused by Duke's allegedly negligent flooding of the Catawba River.

The Parties agree on the elements of a NIED claim under North Carolina law. To properly assert a claim for negligent infliction of emotional distress, "a plaintiff must allege that (1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress. . . and (3) the conduct did in fact cause the plaintiff severe emotional distress." *Newman v. Stepp*, 852 S.E.2d 104, 107 (N.C. 2020) (quoting *Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A.*, 395 S.E.2d 85, 97 (N.C. 1990)). In support of their NIED claim, Plaintiffs allege that Duke was negligent in controlling the water levels as discussed above and make a bare allegation, without further

---

[1] As discussed further below, this Order is limited to the particular facts of this case, and the Court does not hold that conduct which negligently causes property damage may never lead to a viable cause of action for NIED.

4

supporting facts, that "[i]t was reasonably foreseeable to Duke that its negligent conduct would cause Plaintiffs severe emotional distress." Doc. No. 15 at ¶ 64. As to Plaintiffs' emotional distress, the Third Amended Complaint (as well as the Second Amended Complaint, which Plaintiffs were permitted to amend after Duke moved for its dismissal)[2] alleged:

> Duke's conduct did, in fact, caused Plaintiffs to suffer severe emotional distress, including mental anguish, depression, phobia, sleep deprivation, and other various severe and disabling emotional and/or mental conditions.

Doc. No. 15 at ¶ 65. There are no further allegations as to the nature of the emotional distress suffered by any particular Plaintiff, although the pleading does allege that "during the flood, Plaintiffs watched helplessly as their valuable and sentimental property and family homes were damaged and/or destroyed." *Id*. at ¶ 63.

As noted above, a complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555). Thus, although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark[] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*. at 678-79. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief,'" and therefore should be dismissed. *Id*. (quoting Fed. R. Civ. P. 8(a)(2)).

---

[2] Accordingly, Plaintiffs have now had four opportunities to allege their claims with the required specificity, including after Duke moved to dismiss the NIED claim based, in part, on the *Twombly-Iqbal* pleading standard. *See* Doc. 8 at 2; Doc. 9 at 15 n.6.

The Court agrees with the M&R that Plaintiffs' NIED allegations, even generously construed in their favor, are little more than a conclusory recitation of the elements of their claim without specific supporting facts related to the circumstances. That is, while it is theoretically "possible" that a person could suffer severe emotional harm as a consequence of residential flooding (and the Court does not intend in any way to minimize the feelings of loss and harm alleged by the Plaintiffs), here there is no factual allegation to support the alleged fact of severe emotional harm as to *all* the Plaintiffs, other than the generalized, conclusory statement that the harm occurred and was "reasonably foreseeable." Further, this finding is strengthened by Plaintiffs' failure to include any particularized allegations describing the emotional distress suffered by any one of the 57 different Plaintiffs; rather, the allegation is simply made for the group as a whole, notably featuring vague allegations including "mental anguish" and "other various severe … conditions." In sum, the M&R correctly applied the governing pleading standard in concluding that Plaintiffs have not sufficiently alleged their NIED claim. *See McKinney v. Cleveland County Board of Education*, No. 3:20-CV-221-MOC-DSC, 2020 WL 6803846 (W.D.N.C. Nov. 19, 2020) (dismissing NIED claim pursuant to Rule 12(b)(6) where plaintiff failed to allege sufficient facts to support a conclusory allegation of severe emotional distress).

Also, even if the Court found that Plaintiffs' NIED claim was plausibly alleged under *Iqbal* and *Twombly* and accepted Plaintiffs' allegations as true, it fails to state a claim under North Carolina law, which requires that the Plaintiff establish that it was "reasonably foreseeable" that "severe emotional distress" might result from the Defendant's alleged wrongful conduct. *See Johnson*, 395 S.E.2d at 97. While its full bounds are perhaps uncertain, North Carolina courts clearly limit the scope of "reasonable foreseeability" in the context of NIED

claims to truly egregious and heart wrenching circumstances likely to cause severe emotional distress[3] such as the stillborn death of a fetus as a result of medical negligence, the death of a two-year-old child shot with a shotgun at a home daycare or negligence occurring at the gravesite of the plaintiff's just-buried wife. *See Id.* (fetal death); *Newman*, 852 S.E.2d at 107 (daycare shooting); *Matthews v. Forrest*, 235 N.C. 281, 69 S.E.2d 553 (1952) (gravesite negligence). Indeed, even in cases involving a mother witnessing unsuccessful attempts to resuscitate her son after a car accident and parents grieving after their son was negligently overserved alcohol and died in a car accident driving home, the North Carolina Supreme Court has concluded that the plaintiff's alleged emotional distress was not reasonably foreseeable. *See Sorrells v. M.Y.B. Hosp. Ventures of Asheville*, 334 N.C. 669, 435 S.E.2d 320 (1993); *Gardner v. Gardner*, 334 N.C. 662, 435 S.E.2d 324 (1993) ("While anyone should foresee that virtually any parent will suffer *some* emotional distress—'temporary disappointment ... or regret'—in the [death of a child], to establish a claim for NIED the law requires reasonable foresight of an emotional or mental disorder or other severe and disabling emotional or mental condition." (emphasis in original)).

Although Plaintiffs allege in their complaint that they "watched helplessly as their valuable and sentimental property and family homes were damaged and/or destroyed," *Id.* at ¶ 63, and while it would certainly be expected that a person might be emotionally upset by seeing

---

[3] The "term 'severe emotional distress' means any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of *severe and disabling* emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *Waddle v. Sparks*, 331 N.C. 73, 83, 414 S.E.2d 22, 27 (1992) (emphasis in original) (quoting *Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A.*, 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990)). This is a "high standard," and "[t]he law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it." *Waddle*, 331 N.C. at 83-84, 414 S.E.2d at 27-28 (quoting Restatement (Second) of Torts § 46 cmt. j (1965)) (emphasis omitted).

their home flooded,[4] based on the governing North Carolina Supreme Court authority discussed above, it was not "reasonably foreseeable," as a matter of law, that Plaintiffs would experience "severe emotional distress" because of the flooding of their homes. Moreover, Plaintiffs have not cited any North Carolina case that allowed a NIED claim prompted by similar property damage to proceed.[5]  Accordingly, Plaintiffs' NIED claim will be dismissed as recommended in the M&R.

       B.     <u>Applicable Standard of Care</u>

The second prong of Duke's motion similarly asks the Court to dismiss Plaintiffs' remaining claims pursuant to Rule 12(b)(6), but only "to the extent that they are based upon state law standards of care." The M&R recommends that the Court grant Duke's request. The Court agrees with the substance of the M&R and will hold as discussed below that Duke's federal license to operate the CWHP (and related federal law as reflected in the Federal Power Act ("FPA") and Federal Energy Regulatory Commission ("FERC") regulations) sets the applicable standard of care for Plaintiffs' negligence-based claims. However, as a matter of procedure,

---

[4] Again, the Court emphasizes that it does not belittle the emotions of loss and disappointment that Plaintiffs undoubtedly experienced during and after the flooding of their homes. However, here the Court must follow North Carolina law, which clearly holds that "part of living involves some unhappy and disagreeable emotions with which we must cope without recovery of damages." *See Gardner*, 334 N.C. at 667, 435 S.E.2d at 328.

[5] Defendant cites *Chappell v. Ellis*, 123 N.C. 259, 31 S.E.2d 709 (1898), as evidence that North Carolina categorically does not allow recovery for NIED arising out of property damages. In *Chappell*, the Court "reject[ed] a claim for mental anguish arising from loss of property during a lawful eviction." Although *Chappell* and its citation in *Johnson* as an example of an improper claim for NIED, *see Johnson*, 327 N.C. at 306, 395 S.E.2d at 98, support the Court's conclusion that NIED claims are limited to egregious circumstances, it proves too much to argue that *Chappell*, which involved allegations of harm arising, at least in part, from *lawful* conduct, holds that there can be no circumstances in which damage to property can lead to a proper NIED claim. *See Matthew*, 235 N.C. 281, 69 S.E.2d 553 (NIED claim arising from damage to gravesite allowed to proceed).

8

Duke's motion as stated must be denied because Rule 12(b)(6) only applies to dismissal of claims in their entirety.

Rule 12(b)(6) states that a party may assert a number of "defenses" by motion, including "failure to state a claim upon which relief can be granted…" Fed. R. Civ. P. 12(b)(6). By its plain language, the rule thus relates only to dismissal of "a claim" not a portion of a claim (unlike Rule 56, which speaks specifically and separately of the court ruling on "a part of each claim or defense"). Fed. R. Civ. P. 56(a). Therefore, Duke's motion to dismiss Plaintiffs' non-NIED claims only "to an extent" is not properly brought under Rule 12(b)(6) and will be denied without prejudice. *See Koepplinger v. Seterus, Inc.*, No. 1:17CV995, 2018 WL 4055268, at *4 (M.D.N.C. Aug. 24, 2018), *report and recommendation adopted*, No. 1:17-CV-995, 2018 WL 4401738 (M.D.N.C. Sept. 14, 2018), citing *Abraham P. v. Los Angeles Unified Sch. Dist.*, No. CV 17-3105, 2017 WL 4839071, at *6 n.7 (C.D. Cal. Oct. 5, 2017) ("This [c]ourt's practice is to not dismiss parts of claims at the [Rule] 12(b)(6) stage because – unlike Rule 56, for example – [Rule] 12(b)(6) speaks of a motion to dis[mi]ss 'a claim,' not part of a claim. If the [asserted defense] does not get rid of the entire claim, then it cannot be dismissed."); *see also Meeks v. Emiabata*, No. 7:14CV00534, 2015 WL 1636800, at *2 (W.D. Va. Apr. 13, 2015) (holing that "Fed.R.Civ.P. 12(b)(6) does not provide a vehicle to dismiss a portion of relief sought or a specific remedy, but only to dismiss a claim in its entirety"). Nevertheless, because (1) the Parties have fully briefed the issue of the scope of the applicable duty of care as a matter of law both to the Magistrate Judge and to this Court, (2) it was fully considered and ruled on in the M&R and (3) its resolution may assist the Parties as the case proceeds, the Court will rule on the merits of the question now rather than defer its ruling.

Duke operates the CWHP, including a number of dams and reservoirs along the Catawba River, under a comprehensive 157-page federal license, issued in 1958, that governs its operation of the complex, multistate hydroelectric project (which spans approximately 300 miles of the Catawba and Wateree Rivers - stretching from Lake James in North Carolina to Lake Wateree in South Carolina).[6] The license is "subject to the terms and conditions of the [FPA], which is incorporated by reference as part of [the] License, and subject to the regulations [FERC] issues under the provisions of the FPA." Doc. 8-1 at 85.

In *California v. FERC*, 495 U.S. 490, 499, 506–07 (1990), the Supreme Court made clear that under federal law FERC has, consistent with the Supreme Court's earlier holding in *First Iowa Hydro–Electric Cooperative v. FPC,* 328 U.S. 152 (1946), "final authority to establish license conditions (including those with terms inconsistent with the States' recommendations)" for federally licensed hydroelectric power projects. Thus, state laws or measures are "pre-empted to the extent [they] actually conflict[] with federal law, that is, when it is impossible to comply with both state and federal law, or where the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress." *California v. FERC*, 495 U.S. at 506, quoting *Silkwood v. Kerr–McGee Corp.,* 464 U.S. 238, 248 (1984) (holding that California requirements for minimum in-stream flows could not be given effect and allowed to supplement the federal flow requirements).

---

[6] The issuance of the license was the culmination of an application and approval process that involved the submission of a Comprehensive Relicensing Agreement signed by 70 entities, including the North Carolina Department of Environment and Natural Resources (now the North Carolina Department of Environmental Quality), the North Carolina Wildlife Resources Commission, the South Carolina Department of Natural Resources, the Catawba Indian Nation, 29 local and county governments, and 26 conservation and other organizations. *See* Doc. No. 8-1 at 2-3.) The current license runs through 2055. *Id.* at 2, 85.

Case 3:20-cv-00215-KDB-DSC   Document 27   Filed 01/31/22   Page 10 of 13

Later cases interpreting *California v. FERC* further support the conclusion that the FERC license sets the operative duties, obligations, and standard of care for FERC licensees. *See, e.g.*, *Simmons v. Sabine River Authority, La.*, 732 F.3d 469, 476-77 (5th Cir. 2013), *cert. denied*, 134 S. Ct. 1876 (2014) (concluding that "FERC, not state tort law, must set the appropriate duty of care for dam operators" and reasoning that "[a]pplying state tort law to set the duty of care for the operation of FERC-licensed projects would 'stand[ ] as an obstacle to the accomplishment and execution of the full purposes and objectives' of the FPA"); *Carrington v. City of Tacoma, Dep't of Pub. Util., Light Div.*, 276 F. Supp. 3d 1035, 1041 (W.D. Wash. 2017) ("Plaintiffs' negligence claim necessarily raises a federal question because [the dam operator's] FERC license established the applicable duty of care."); *see also Funderburk v. SCE&G Funderburk*, 179 F. Supp. 3d 569, 578-79 (D.S.C. 2016) ("Plaintiffs' attempt to avoid reference to federal law [in their negligence claim] through artful pleading is not compelling since the FERC 'set[s] the appropriate duty of care for dam operators.'" (quoting *Simmons*, 732 F.3d at 476-77)).

Applying this well-established authority, Duke's license to operate the CWHP, along with incorporated federal law and regulations under the FPA and FERC, govern and set the standard for Duke's operations, including the conduct that Plaintiffs challenge in this action. Plaintiffs argue that they should be able to rely on both North Carolina common law and federal law as the standard of care for their negligence claims because the two standards are allegedly not in conflict. This argument, even if true, does not change the application of federal law.[7] If the license / federal law standard is truly the same as the state standard, then the state standard is

---

[7] Plaintiffs' arguments concerning the application of North Carolina law ignore the fact that the CWHP reaches beyond North Carolina into South Carolina. The multistate nature of the project only further emphasizes the importance of a federal standard of care. Otherwise, Duke might potentially be held to a different standard for harm in South Carolina and North Carolina arising from a single flooding event.

either duplicative or irrelevant, but in any event need not be relied upon. On the other hand, if the federal and state standards are different then the federal standards must control under *California v. FERC*.

In sum, the Court will accept the recommendation in the M&R and hold that Duke's license and the related federal law and regulations set the applicable standard of care for Plaintiffs' negligence based claims. To be clear, and as acknowledged by Duke, Plaintiffs may assert a negligence claim under North Carolina law to hold Duke to its duties as a FERC licensee. The ultimate merits of that claim (on which the Court has no opinion at this early stage of the case) is yet to be determined. However, it is the relevant federal requirements and standards, not North Carolina common law, that will determine if Duke breached any duty of care to Plaintiffs.

## IV.    ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Defendant's Partial Motion to Dismiss Third Amended Complaint (Doc. No. 17) is **GRANTED in part and DENIED in part;**

2. Plaintiffs' claim for Negligent Infliction of Emotional Distress is dismissed;

3. Defendant's motion to partially dismiss Plaintiffs' other negligence-based claims is denied without prejudice;

4. Duke's federal license to operate the CWHP together with related federal law under the FPA and FERC regulations shall set the applicable standard of care for Plaintiffs' negligence-based claims; and

5. This case shall proceed towards a resolution of the merits of Plaintiffs' remaining claims in the absence of a voluntary resolution of the dispute among the parties.

12

**SO ORDERED ADJUDGED AND DECREED**.

Signed:    January    31, 2022

Kenneth D. Bell
United States District Judge